1   Mark H. Meyerhoff, Bar No. 180414
      mmeyerhoff@lcwlegal.com
2   Joung H. Yim, Bar No. 216136
      jyim@lcwlegal.com
3   LIEBERT CASSIDY WHITMORE
      A Professional Law Corporation
4   6033 W. Century Boulevard, Suite 500
      Los Angeles, CA 90045
5

6   Telephone: (310) 981-2000
      Facsimile: (310) 337-0837
7
      Attorneys for Defendants
8   CITY OF TORRANCE and
      JOHN J. NEU
9

10                UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| REHAN NAZIR,<br><br>        Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES [an entity of unknown form]; COUNTY OF LOS ANGELES DISTRICT ATTORNEY'S OFFICE [an entity of unknown form]; LAWRENCE E. MASON, in his capacity as Senior Special Assistant for the COUNTY OF LOS ANGELES DISTRICT ATTORNEY'S OFFICE; CITY OF TORRANCE, a municipal corporation; JOHN J. NEU, individually and as Chief of Police of the City of Torrance Police Department; DOES 1 THROUGH 10,<br><br>        Defendants. | Case No. CV 10-6546 SVW (AGRx)<br><br>Assigned to Hon. Stephen V. Wilson<br>Courtroom: 6<br>Complaint Filed: September 1, 2010<br><br>**DEFENDANTS CITY OF TORRANCE AND JOHN J. NEU'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Fed. R. Civ. Pro. 56]<br><br>**[Filed concurrently with Separate Statement of Uncontroverted Facts and Conclusions of Law, Appendix of Evidentiary Support, and [Proposed] Order and Judgment]**<br><br>Hearing Date: May 16, 2011<br>Time: 1:30 p.m.<br>Dept.: Courtroom No. 6 |

TO THE COURT, PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 16, 2011, at 1:30 p.m., or as soon thereafter as counsel may be heard in Courtroom No. 6 of the above entitled Court, located at 312 N. Spring Street, Los Angeles, California, Defendants CITY OF TORRANCE and JOHN J. NEU (collectively "Defendants") will move the Court, pursuant to Federal Rule of Civil Procedure 56, for Summary Judgment in favor of the Defendants on Plaintiff Rehan Nazir's claim[1] for First Amendment retaliation pursuant to 42 U.S.C. section 1983. Based on the applicable law and the uncontroverted facts, this motion is on the following grounds:

1.     Plaintiff's claim for relief fails to assert a prima facie case for First Amendment retaliation pursuant to 42 U.S.C. §1983. Plaintiff's alleged speech is not a matter of public concern and is not constitutionally protected under section 1983.

2.     Plaintiff's claim for relief fails to assert a prima facie case for First Amendment retaliation pursuant to 42 U.S.C. §1983. Plaintiff's speech was made in his capacity as a public employee and in the course of his duties as a police officer and not as a private citizen.

3.     Plaintiff's claim for relief fails to assert a prima facie case for First Amendment retaliation pursuant to 42 U.S.C. §1983. Absent speculation, Plaintiff is unable to raise a triable issue that his speech was a substantial or motivating factor in his termination.

4.     In the event Plaintiff can establish a prima facie case for First Amendment retaliation, summary judgment is still proper because the evidence shows that the Defendants had a legitimate business reason for terminating Plaintiff's employment given his placement in the Los Angeles County District Attorney's "Brady Alert System" and would have engaged in the same asserted

---

[1] This court has trifurcated the three claims for relief against the City and/or Neu and therefore Defendants seek summary judgment only as to Plaintiff's section 1983 claim at this juncture.

494781.1 TO020-062

1    conduct in the absence of Plaintiff's alleged protected speech.

2        5.    Plaintiff cannot state a claim for violation of 42 U.S.C. section 1983

3    against individual defendant John J. Neu because Chief Neu is entitled to qualified

4    immunity.

5        This Motion is made following the conferences of counsel pursuant to

6    Central District Local Rule 7-3, which took place on April 6 and 13, 2011. (*See*

7    Paragraph 10 of the Declaration of Joung H. Yim, attached to Defendant's

8    Appendix of Evidence filed concurrently herewith.) This Motion is based upon this

9    Notice of Motion and Motion, the attached Memorandum of Points and Authorities,

10   the Separate Statement filed concurrently herewith, the Declarations and Exhibits in

11   Defendant's Appendix of Evidentiary Support, the pleadings and papers filed in this

12   case, and upon any other oral or documentary evidence that may be timely

13   presented prior to the hearing of this motion.

14

15   Dated: April 15, 2011                    LIEBERT CASSIDY WHITMORE

16                                            By: _____

17                                               Mark H. Meyerhoff
                                                 Joung H. Yim
18                                               Attorneys for Defendants
                                                 CITY OF TORRANCE and
19                                               JOHN J. NEU

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   **INTRODUCTION** ..................................................................................1

II.  **STATEMENT OF FACTS** .....................................................................2

    A.   Background ........................................................................................2

    B.   The District Attorney's Office's Brady Protocol ....................................2

    C.   Plaintiff Uses A Confidential Informant To Arrest A Suspect
        For Intent To Sell PCP .........................................................................3

    D.   The D.A.'s Office Dismisses The State Prosecution Against
        Baker .................................................................................................4

    E.   The D.A. Office's Brady Compliance Division Notifies Plaintiff
        Of Its Intention To Place Him In The "Brady Alert System" ...............4

    F.   Plaintiff Unsuccessfully Appeals The Division's Decision And
        Plaintiff Is Placed In The "Brady Alert System." ...............................5

    G.   The City Is Notified Of Plaintiff's Placement In The "Brady
        Alert System." ....................................................................................6

    H.   Chief Neu Verifies That The Department Would Be
        Substantially Impacted By Plaintiff's Placement In The Brady
        Alert System ......................................................................................6

    I.   Plaintiff Confirms The Substantial Impact On The Viability Of
        His Employment As A Police Officer Due To His Placement In
        The Brady Alert System. .....................................................................7

    J.   Chief Neu Recommends Plaintiff's Termination ................................8

    K.   The City Terminates Plaintiff For The Reasons Set Forth In
        Chief Neu's Recommendation ............................................................9

    L.   Plaintiff Admits His Termination Was Based Upon His
        Inclusion In The "Brady Alert System." ...........................................9

    M.   Plaintiff Now Contends His Termination Was Based Upon
        Purported "Speech" He Engaged In Approximately Two Years
        Prior To His Termination ...................................................................10

    N.   Plaintiff Did Not Have Any Discussions Regarding The City's
        Policy Regarding the Disclosure Of Witnesses ................................11

II.  **LEGAL ARGUMENT** ..........................................................................11

    A.   Standard for Ruling on Motions for Summary Judgment....................11

    B.   Defendants Are Entitled to Summary Judgment On Plaintiff's
        First Amendment Retaliation Claim ....................................................12

        1.   Plaintiff's Speech Is Not Protected Because It Does Not
            Involve Matters of Public Concern ...........................................13

        2.   Plaintiff's Purported Disclosure of the City's Informant
            Policy Was Made In His Capacity As A Public Employee.......15

        3.   Plaintiff Has No Evidence That His Purported Speech
            Was A Substantial Or Motivating Factor For His
            Termination...............................................................................17

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

a.   No Temporal Proximity..................................................18

b.   Plaintiff Has No Evidence That The Decisionmaker Was Aware Of His Disclosure To The D.A.'s Office..............19

c.   Plaintiff Has No Evidence That The Basis Of His Termination Was False And Pretextual.............................20

4.   Defendants Had Adequate Justification For Terminating Plaintiff ......................................................................21

C.   Individual Defendant Chief Neu Is Entitled To Qualified Immunity ...............................................................................23

**III. CONCLUSION** ...............................................................................24

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

# TABLE OF AUTHORITIES

Page

**California Cases**

*Christal v. Police Commission of City and County of San Francisco,*
  33 Cal.App.2d 564 (1939) ................................................................. 16

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242, 106 S.Ct. 2505, 2510 (1986) .......................................... 12

*Anthoine v. North Central Counties Consortium,*
  605 F.3d 740 (9th Cir. 2010) .............................................................. 16

*Blue v. Koren,*
  72 F.3d 1075 (2d. Cir. 1995) ............................................................. 18

*Brady v. Maryland,*
  373 U.S. 83 (1963) ................................................................... passim

*Brewster v. Board of Educ. of Lynwood Unified School Dist.,*
  149 F.3d 971 (9th Cir. 1998) ............................................................. 23

*Brownfield v. City of Yakima,*
  612 F.3d 1140 (9th Cir. 2010) ........................................................... 12

*Celotex Corp. v. Catrett,*
  477 U.S. 317, 106 S. Ct. 2548 (1986) ................................................ 12

*Clark County School Dist. v. Breeden,*
  532 U.S. 268 (2001) ....................................................................... 18

*Cohen v. Fred Meyer, Inc.,*
  686 F. 2d 793 (9th Cir. 1982) ........................................................... 19

*Connick v. Myers,*
  461 U.S. 138 (1983) ....................................................................... 14

*Desrochers v. City of San Bernardino,*
  572 F.3d 703 (9th Cir. 2009) ........................................................... 14

*Eng v. Cooley,*
  552 F.3d 1062 (9th Cir. 2009) ................................................ 13, 16, 21, 23

*Erickson v. Pierce County,*
  960 F. 2d 801 (9th Cir. 1992) ........................................................... 17

*Falls Riverway Realty, Inc. v. Niagara Falls,*
  754 F.2d 49 (2d Cir. 1985) .............................................................. 12

*Gillette v. Delmore,*
  886 F.2d 1194 (9th Cir. 1989) ........................................................... 17

*Hansen v. Soldenwagner,*
  19 F.3d 573 (11th Cir. 1994) ............................................................ 23

*Hughes v. Derwinski,*
  967 F.2d 1168 (7th Cir.1992) ........................................................... 18

*Huppert v. City of Pittsburg,*
  574 F.3d 696 (9th Cir. 2009) ................................................ 12, 13, 16

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

*Johnson v. Multnomah County,*
   48 F.3d 420 (9th Cir. 1995) .............................................................14

*Keyser v. Sacramento City Unified Sch. Dist.,*
   265 F.3d 741 (9th Cir. 2001) ...........................................................17

*Knickerbocker v. City of Stockton,*
   81 F.3d 907 (9th Cir. 1996) .............................................................18

*Lockwood v. Wolf Corp.,*
   629 F2d 603 (9th Cir. 1980) ............................................................12

*Luox v. Marie,*
   337 Fed.Appx. 695 (9th Cir. 2009)..................................................15

*Lytle v. Wondrash,*
   182 F.3d 1083 (9th Cir. 1999) .........................................................23

*McEvoy v. Shoemaker,*
   882 F.2d (10th Cir. 1989) ................................................................15

*Miller v. Glenn Miller Productions, Inc.,*
   454 F.3d 975 (9th Cir. 2006) ...........................................................12

*Morris v. Lindau,*
   196 F.3d 102 (2d Cir. 1999)..............................................................18

*O'Neal v. Ferguson Constr. Co.,*
   237 F.3d 1248 (10th Cir.2001) ........................................................18

*Phelan v. Cook County,*
   463 F.3d 773 (7th Cir.2006) ............................................................15

*Raad v. Fairbanks North Star Borough School District,*
   323 F.3d 1185 (9th Cir. 2003) .........................................................19

*Richmond v. ONEOK, Inc.,*
   120 F.3d 205 (10th Cir.1997) ..........................................................18

*Robinson v. County of Los Angeles,*
   566 F.3d 817 (9th Cir. 2009) ...........................................................14

*Thornhill Pub. Co., Inc. v. GTE Corp.,*
   594 F.2d 730 (9th Cir. 1979) ...........................................................12

*Weeks v. Bayer,*
   246 F.3d 1231 (9th Cir. 2001) .........................................................13

*Wicks v. Mississippi State Employment Services,*
   41 F.3d 991 (5th Cir.1995) ..............................................................15

**Statutes**

42 U.S.C. §1983 ...............................................................2, 15, 23

Fed. R. Civ. P. 56(c) .........................................................................11

Fed. R. Civ. P. 56(e)(2)....................................................................12

Fed. Rules Evid. 801(d)(2) ...............................................................12

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

DEFENDANT CITY OF TORRANCE'S
MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

The City of Torrance ("City") terminated Plaintiff Rehan Nazir ("Plaintiff") from his position as police officer for the City in September, 2010.  Plaintiff's termination was based entirely upon an independent finding by the Los Angeles District Attorney's Office ("D.A.'s Office") that Plaintiff had submitted false police reports in connection with an arrest the D.A.'s Office prosecuted, and subsequently dismissed, after discovering Plaintiff's misconduct.

In addition, the D.A.'s Office independently concluded, with no input or consultation from the City, that Plaintiff's misconduct required that his name – and a brief summary of his misconduct – be placed into the D.A's Office "Brady Alert System."  Placement in the "Brady Alert System" means that any district attorney prosecuting a case in which Plaintiff was a material witness (such as an arresting officer) would be compelled to divulge Plaintiff's misconduct (i.e. submitting false reports) to the defense, thus jeopardizing the prosecution of any case involving Plaintiff as a witness.  Plaintiff remains in the "Brady Alert System" to this day.

Based upon the D.A.'s Office independent conclusion, the City, based upon a recommendation by Police Chief John Neu ("Neu") terminated Plaintiff.  The City determined that Plaintiff could not fulfill the essential duties of a police officer due to his placement in the "Brady Alert System" and that any case in which Plaintiff was involved would either not be filed by the District Attorney, or would jeopardize the outcome of the case.  The City reached this result after consulting with District Attorneys, reviewing the D.A.'s Offices determination and considering the impact of Plaintiff's inclusion in the "Brady Alert System."

These facts are undisputed.  Also undisputed are Plaintiff's admissions that (1) the City terminated him <u>because</u> he was placed in the "Brady Alert System," (2) placement in the "Brady Alert System" effectively prohibited Plaintiff from serving

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1

DEFENDANT CITY OF TORRANCE'S
MOTION FOR SUMMARY JUDGMENT

1  as a police officer for any police agency, including Torrance.  These admissions

2  alone necessitate summary judgment.

3       However, despite admitting that the City terminated him solely because of

4  his placement in the "Brady Alert System," Plaintiff also inconsistently alleges that

5  his termination was actually based upon various grievances, lawsuits and

6  complaints Plaintiff submitted to the City up to two and half years prior to his

7  termination.  However, the evidence shows that Plaintiff's First Amendment claim

8  is nothing more than an attempt to cloak Plaintiff's personal grievances and petty

9  disputes under the protection of the First Amendment.

10      In addition, Plaintiff fails to establish any evidence to link his termination to

11  any "speech" he engaged in during his employment.  Rather, Plaintiff attempts to

12  fashion a First Amendment claim out of nothing more than speculation and

13  conjecture.

14      In stark contrast to Plaintiff's unsupported speculation is the clear and

15  consistent evidence showing that the City terminated Plaintiff based only upon the

16  D.A.'s Office independent conclusion that Plaintiff submitted false reports and that

17  his conduct must be divulged in any prosecution involving Plaintiff.  Plaintiff

18  cannot escape this unavoidable fact and for this reason alone summary judgment is

19  proper.

20  **II.    STATEMENT OF FACTS**

21      **A.    Background**

22      The City of Torrance employed Plaintiff as a Police Officer from on or about

23  2000 until his termination on September 9, 2010.  (UF. No. 1)  As part of his duties

24  as a police officer Plaintiff often testified as a prosecution witness in criminal

25  matters.  (UF. No. 2)

26      **B.    The District Attorney's Office's Brady Protocol**

27      At all times pertinent to this action, the Los Angeles County District

28  Attorney's Office ("D.A.'s Office") maintained a protocol for handling evidence

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1  under *Brady v. Maryland*, 373 U.S. 83 (1963). (UF No. 3) The protocol is Special

2  Directive 02-08 ("Brady Protocol"). (*Ibid.*) The Brady Protocol sets forth

3  guidelines to ensure the D.A.'s Office uniformly and consistently meets its

4  constitutionally required discovery obligations under *Brady*. (UF No. 4)

5  According to the Brady Protocol, prosecutors are "required to disclose to the

6  defense evidence <u>favorable to a defendant</u> which is either <u>exculpatory</u> or

7  <u>impeaching</u> and is <u>material</u> to either <u>guilt</u> or <u>punishment</u>." (Emphasis in original)

8  (UF No. 5) Pursuant to the Brady Protocol, "impeachment evidence" includes

9  "false reports by a prosecution witness," or "evidence contradicting a prosecution

10 witness' statements or report." (UF No. 6)

11        The Brady Protocol requires that any discovery of potential Brady

12 information must be sent to the D.A. Office's Brady Compliance Division

13 ("Division"). (UF No. 7) The Division maintains a computer-based "Brady Alert

14 System" which contains Brady information. (UF No. 8) All Deputy District

15 Attorneys can access the "Brady Alert System" to determine whether Brady

16 information on a particular witness exists. (UF No. 9) Any Deputy District

17 Attorney appearing in court on a case has a responsibility to notify the defense of

18 any information learned from the "Brady Alert System." (UF No. 10)

19        The Division determines whether to include information concerning a peace

20 officer in the "Brady Alert System." (UF No. 11) Any decision to include

21 information in the "Brady Alert System" is made using a standard of "clear and

22 convincing evidence." (UF No. 12) If the Division determines Brady material

23 exists, it will notify the employee's agency in writing of the determination and

24 action. (UF No. 13)

25        **C.    Plaintiff Uses A Confidential Informant To Arrest A Suspect For**
              **Intent To Sell PCP**
26

27        On or about April 14, 2007, Plaintiff and his partner, Bryan Okazaki, arrested

28 Michael Baker ("Baker") in the parking lot of a 7-Eleven convenience store in

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   Torrance for transporting for sale a half gallon of Phencyclidine ("PCP").  (UF No.

2   14)  Approximately 30 to 45 minutes prior to arresting Baker, Plaintiff used

3   information from a confidential informant to arrange for Baker to make a drug sale

4   at the 7-Eleven convenience store where Baker was later arrested.  (UF No. 15)  At

5   the time Plaintiff used the confidential informant to arrange for the drug sale at the

6   7-Eleven convenience store, Plaintiff knew that a robbery had occurred at the same

7   location earlier that evening. (UF No. 16)  The confidential informant also provided

8   Plaintiff with a physical description of Baker at the time Plaintiff set up the drug

9   purchase with the informant.  (UF No. 17)

10          Following Baker's arrest, Plaintiff prepared an arrest report in which

11   Plaintiff, among other things, stated that he initially contacted Baker in the parking

12   lot of the 7-Eleven "based on the fact that the robbery had occurred earlier at the 7-

13   11 store" and that Baker was "possibly casing the 7-11 store for robbery."  (UF No.

14   18)

15          Following Baker's arrest, Plaintiff also prepared a "probable cause

16   declaration."  In the declaration, Plaintiff stated that he initially contacted Baker

17   because "he matched the description of the robbery suspect." (UF No. 19)  Neither

18   the arrest report, nor the probable cause declaration, contained any reference to

19   Plaintiff's contact with the confidential informant shortly before Baker's arrest.

20   (UF No. 20)

21          **D.     The D.A.'s Office Dismisses The State Prosecution Against Baker**

22          The Baker arrest was submitted to the D.A.'s Office for filing.  (UF No. 21)

23   On or about October 2008, during the course of a federal prosecution against Baker,

24   Baker's defense attorney learned of the prosecution's use of a confidential

25   informant in connection with the Baker arrest and moved to dismiss the state case.

26   (UF No. 22)  On or about October, 2008, the D.A.'s Office dismissed the state case

27   against Baker.  (UF No. 23)

28          **E.     The D.A. Office's Brady Compliance Division Notifies Plaintiff Of**

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

**Its Intention To Place Him In The "Brady Alert System"**

On or about February 2, 2009, the D.A. Office's Brady Compliance Division notified Plaintiff, in writing, that it had made a determination to place him in the "Brady Alert System." (UF No. 24)  The determination was based on the Division's finding that Plaintiff had included false information in the arrest report and probable cause declaration relating to the Baker arrest.  (UF No. 25)  The Division also determined that when Plaintiff was a material witness in a prosecution, it would have to turn over to the defense information that Plaintiff stated in the reports that he contacted Baker because he suspected Baker was a robbery suspect when "the truth was that [Plaintiff] had utilized an informant to set up a narcotics purchase." (UF No. 26)  The Division further notified Plaintiff that "falsification of arrest documents is an act involving moral turpitude." (UF No. 27)

The Division also notified Plaintiff that he had the right to appeal its determination to Senior Special Assistant Lawrence Mason, a former judge, who would make the final decision regarding placing Plaintiff in the "Brady Alert System." (UF No. 28)

**F.    Plaintiff Unsuccessfully Appeals The Division's Decision And Plaintiff Is Placed In The "Brady Alert System."**

On or about April 23, 2010, Plaintiff appealed the Division's determination to place him in the "Brady Alert System." (UF No. 29)

On or about June 3, 2010, Senior Special Assistant Mason notified Plaintiff, in writing, that "there is substantial evidence to support the finding of the Brady Compliance Division that Brady material exists and that such information be placed in the District Attorney's Brady Alert System." (UF No. 30)  Mr. Mason's final determination was based upon "a finding by the Brady Compliance Division that Officer Nazir authored an arrest report and two Declarations of Probable Cause (PCDs) which contained false information." (UF No. 31)  Mr. Mason's review constituted the final decision of the D.A.'s Office. (UF No. 32)

1    Torrance Police Chief John Neu did not have any involvement with the

2  D.A.'s Office, the Brady Compliance Division, Mr. Mason, or any other individual

3  within the D.A.'s Office regarding the investigation or review into Plaintiff's

4  misconduct related to his arrest of Michael Baker in April 2007.  (UF No. 33) Chief

5  Neu was also not involved in making the determination that Plaintiff be placed in

6  the "Brady Alert System."  (UF No. 34)  Plaintiff has no evidence that any

7  manager, supervisor, or employee within the Torrance Police Department had any

8  input into the D.A. Office's decision to place Plaintiff in the "Brady Alert System."

9  (UF No. 35)  Rather, the D.A. Office's determination was based in accordance

10  with the Brady Protocol.  (UF No. 36)

11    **G.    The City Is Notified Of Plaintiff's Placement In The "Brady Alert
         System."**

12

13    On or about June 10, 2010, Irene Wakabayashi, Head Deputy of the District

14  Attorney's Office, Appellate Division for the Brady Compliance Unit notified

15  Police Chief John Neu, in writing, that the D.A.'s office had determined that Brady

16  impeachment material which related to Plaintiff existed.  (UF No. 37)  Ms.

17  Wakabayashi further notified Chief Neu that the Brady Compliance Unit had

18  reviewed allegations that Plaintiff authored probable cause declarations and an

19  arrest report relating to the Baker arrest "which contained false information" and

20  determined that Plaintiff's conduct "involved moral turpitude," thus constituting

21  Brady material.  (UF No. 38)  Finally, Ms. Wakabayashi notified Chief Neu that

22  Plaintiff's name "along with a brief description of the conduct involved has been

23  placed in [the District Attorney Office's] Brady Alert System . . . ."  (UF No. 39)

24    **H.    Chief Neu Verifies That The Department Would Be Substantially
         Impacted By Plaintiff's Placement In The Brady Alert System**

25    After receiving Ms. Wakabayashi's June 10 letter, Chief Neu took steps to

26  determine the impact on the Torrance Police Department of Plaintiff's placement in

27  the "Brady Alert System."  (UF No. 40)  To this end, on or about June 21, 2010,

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   Chief Neu and Deputy Police Chief Mike Browne met with the Head Deputy Los

2   Angeles County District Attorney for the Torrance Branch, Diane Vezzani (since

3   retired) and the Assistant Head Deputy District Attorney Shawn Randolph. (UF

4   No. 41)

5   During this meeting, Ms. Vezzani advised Chief Neu and Deputy Chief

6   Browne that she read Ms. Wakabayashi's June 10 letter. (UF No. 42) Based on the

7   letter, Ms. Vezzani concluded that she would never approve a criminal filing of any

8   case in which Plaintiff was a material witness, nor allow Plaintiff to testify in any

9   such matter. (UF No. 43) Ms. Vezzani considered Plaintiff's conduct, as described

10  in Ms. Wakabayashi's letter, to be very serious because his conduct impacted his

11  credibility as a witness. (UF No. 44)

12  Prior to making a determination regarding Plaintiff's employment with the

13  City, Chief Neu also reviewed the *Brady v. State of Maryland* decision and Brady

14  Protocol – Special Directive 02-08. (UF No. 45) After reviewing these sources,

15  Chief Neu concluded that the D.A.'s Office had independently determined that it

16  must, under *Brady*, disclose to the defense its finding that Officer Nazir included

17  false information in police reports in connection with the Baker arrest. (UF No. 46)

18  Based on Plaintiff's placement in the "Brady Alert System," Chief Neu also

19  concluded that Plaintiff's continued employment with the Torrance Police

20  Department would harm the public service in at least two significant ways: 1) cases

21  in which Plaintiff was the arresting officer, or a material witness, may not be filed

22  by the District Attorney, and 2) even if such a case were filed, Plaintiff's credibility

23  would be subject to challenge and the prosecution of such a case would likely to be

24  undermined. (UF No. 47)

25  **I.     Plaintiff Confirms The Substantial Impact On The Viability Of**
**His Employment As A Police Officer Due To His Placement In The**
26  **Brady Alert System.**

27  Plaintiff alleges, and thus admits, that his placement in the "Brady Alert

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   System" effectively "blacklists" him from further employment as a police officer as
2   "no law enforcement agency will hire him so long as he remains" in the System.
3   (UF No. 48)  Further, Plaintiff admits that placement in the "Brady Alert System"
4   effectively deprived him of his employment with the City of Torrance.  (UF No. 49)
5   Plaintiff also acknowledges that his placement in the "Brady Alert System" could
6   result in the D.A. Office's findings regarding the Baker arrest being communicated
7   to "criminal defense attorneys, criminal defendants, juries and the bench of the Los
8   Angeles County Superior Court . ..."  (UF No. 50)

9       Ultimately, Plaintiff admits that the County of Los Angeles placed him on
10  the Brady list, which caused his termination from the City. (UF No. 52)  Moreover,
11  Plaintiff does not know if the Department had any involvement with the D.A.'s
12  office placing him into the Brady Alert System.  (UF No. 53)

13      **J.    Chief Neu Recommends Plaintiff's Termination**

14      On or about August 16, 2010, Chief Neu recommended to the City Manager
15  that Plaintiff be terminated.  (UF No. 54)  In his recommendation, Chief Neu noted
16  that a police officer is required to, among other things, testify in Court in
17  connection with prosecution.  (UF No. 55)  Chief Neu also concluded that the
18  D.A.'s Office had made a final decision that it would have to disclose to the defense
19  its finding that Plaintiff made false reports.  (UF No. 56)   Thus cases in which
20  Plaintiff was the arresting officer, or a material witness, may not be filed by the
21  District Attorney, and even if such a case were filed, Officer Nazir's credibility
22  would be subject to challenge and the prosecution of such a case would likely to be
23  undermined.  (UF No. 47)

24      Accordingly, Chief Neu's recommendation stated that Plaintiff's placement
25  in the "Brady Alert System" would prohibit him from performing the essential and
26  fundamental functions as a law enforcement officer for the City and would result in
27  extreme detriment to the Department and the community it serves.  (UF No. 57)

28      Chief Neu also notified Plaintiff of his right to respond to the

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

DEFENDANT CITY OF TORRANCE'S
MOTION FOR SUMMARY JUDGMENT

1    recommendation prior to a final decision being made. (UF No. 58)  At the time

2    Chief Neu made his recommendation, he had no knowledge of the contents of

3    Plaintiff's April 23, 2010 appeal. (UF Nos. 59, 60)  During his tenure as Police

4    Chief, Chief Neu has never retained any officer or police department employee who

5    has been placed in the "Brady Alert System." (UF No. 61)

6         Chief Neu's decision to recommend Plaintiff's termination was not based in

7    any way upon any grievances, lawsuits or complaints Officer Nazir submitted to, or

8    filed against, the City during his employment with the City.  Rather, Chief Neu's

9    recommendation was based entirely upon Plaintiff's placement in the "Brady Alert

10   System" and the subsequent consequence of that placement.  (UF No. 62)

11        No one ever told Plaintiff and he is unaware of any documents that he was

12   terminated as a police officer for any reason other than what is set forth in the

13   Notice of Intent to terminate him which was issued to Plaintiff on August 16, 2010.

14   (UF No. 63)

15   **K.    The City Terminates Plaintiff For The Reasons Set Forth In Chief**
         **Neu's Recommendation**

16

17        After Chief Neu's recommendation to terminate Plaintiff was served upon

18   Plaintiff, a meeting was schedule for September 7, 2010 to allow Plantiff to respond

19   to the contents of Chief Neu's recommendation. (UF No. 64)  City of Torrance

20   Assistant City Manager Mary Giordano was assigned to consider Plaintiff's

21   response. (UF No. 65)  However, Plaintiff did not appear at the scheduled meeting.

22   (UF No. 66)

23        After reviewing Chief Neu's recommendation, and the accompanying

24   materials that were served upon Plaintiff, Ms. Giordano affirmed Chief Neu's

25   recommendation and Plaintiff was terminated on September 9, 2010.  (UF No. 67)

26   **L.    Plaintiff Admits His Termination Was Based Upon His Inclusion**
         **In The "Brady Alert System."**

27        Plaintiff alleges, and thus admits, that the D.A. Office's determination to

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

include him in the "Brady Alert System" "did actually lead to, and were used as a basis for, [Plaintiff's] termination." (UF Nos. 49, 51, 52)  Plaintiff also admitted during his deposition that his placement in the "Brady Alert System" resulted in his termination from the City.  (*Ibid.*)

### M.   Plaintiff Now Contends His Termination Was Based Upon Purported "Speech" He Engaged In Approximately Two Years Prior To His Termination

Plaintiff claims he was terminated due to "speech" he engaged in approximately two years *before* his termination.  (UF Nos. 68, 69.)  Specifically, Plaintiff identifies and limits the particular speech as follows:

•    On or about *January 3, 2008*, Plaintiff submitted a grievance to the Police Department complaining that he was passed over twice for promotion to Sergeant.  (UF No. 69.)

•    On or about *July 30, 2008*, Plaintiff submitted a grievance to the Police Department complaining that he be reassigned from the Communications Division. (UF No. 69.)

•    On or about *March 10, 2008*, Plaintiff's recognized labor representative, the Torrance Police Officer's Association filed with the Los Angeles Superior Court, a Petition for Writ of Mandate seeking to compel the City to fill a Police Sergeant position.  The Petition did not identify Plaintiff specifically.  (UF No. 69)

•    On or about *August 22, 2008*, Plaintiff filed a Petition for Writ of Mandate in Los Angeles Superior Court seeking to compel the City to appoint him to the Police Sergeant position.  (UF No. 69)

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA  90045

DEFENDANT CITY OF TORRANCE'S
MOTION FOR SUMMARY JUDGMENT

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1    &bull;    In or about ***October, 2008***, Plaintiff asserted that he was treated poorly

2    by a supervisor within the Communications Division. (UF No. 69) The allegations

3    asserted by Plaintiff were that the supervisor stared at him, criticized his work

4    product, and micro-managed his work. (UF No. 70) The harassment claim was

5    investigated by an independent investigator who concluded that the charges were

6    not sustained. (UF No. 71)

7    &bull;    On or about December 15, 2008, Plaintiff filed a claim against a

8    Lieutenant based on the Lieutenant allegedly stating to Plaintiff's co-workers that it

9    was "good news" that Plaintiff was placed on paid administrative leave . (UF Nos.

10    69, 72) Following an investigation, this allegation was not sustained. (UF No. 73)

11    Plaintiff cannot identify any comments made by any City employee or any

12    documents prepared by any City employee that indicate that he was terminated for

13    his speech. (UF No. 74) Chief Neu's recommendation to terminate Plaintiff was

14    not based upon anything other than Plaintiff's placement in the "Brady Alert

15    System" and the subsequent impact or potential impact on the Department. (UF

16    No. 62)

17    **N.    Plaintiff Did Not Have Any Discussions Regarding The City's**
      **Policy Regarding the Disclosure Of Witnesses**
18

19    Plaintiff did not discuss with anyone from the D.A.'s Office or the County of

20    Los Angeles regarding the City of Torrance's policy relating to the disclosure of

21    informants. (UF No. 75)

22    **II.    LEGAL ARGUMENT**

23    **A.    Standard for Ruling on Motions for Summary Judgment**

24    Summary judgment must be granted when "the pleadings, the discovery and

25    disclosure materials on file, and any affidavits show that there is no genuine issue

26    as to any material fact and that the movant is entitled to judgment as a matter of

27    law." (Fed. R. Civ. P. 56(c).)    The party moving for summary judgment bears the

28    initial burden of offering proof of the absence of any genuine issue of material fact.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).)  Once the

2   moving party's burden is met, the party opposing the motion is required to go

3   beyond the pleadings and "set out specific facts showing a genuine issue for trial."

4   (Fed. R. Civ. P. 56(e)(2); *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975,

5   987 (9th Cir. 2006).)

6        To show that there are genuine issues of material fact, the opposing party

7   must provide sufficient evidence such that a reasonable jury could return a verdict

8   in its favor under the governing law.  (*Anderson v. Liberty Lobby, Inc.*, 477 U.S.

9   242, 248, 106 S.Ct. 2505, 2510 (1986).)  Conclusory, speculative testimony in

10  affidavits and moving papers is insufficient to raise genuine issues of fact and

11  defeat summary judgment. (*Falls Riverway Realty, Inc. v, Niagara Falls*, 754 F.2d

12  49, 56 (2d Cir. 1985); *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738

13  (9th Cir. 1979).).

14       Admissions in the opposing party's pleadings (even if unverified) are

15  admissible evidence (Fed. Rules Evid. 801(d)(2)) and therefore can serve as the

16  basis for summary judgment. (*Lockwood v. Wolf Corp.*, 629 F2d 603, 611 (9th Cir.

17  1980).)

18   **B.    Defendants Are Entitled to Summary Judgment On Plaintiff's**
19           **First Amendment Retaliation Claim**

20       "Courts considering [a public employee's First Amendment retaliation] claim

21   ... must carefully balance 'the interests of the public employee, as a citizen, in

22   commenting upon matters of public concern and the interest of the State, as an

23   employer, in promoting the efficiency of the public services it performs through its

24   employees.'" (*Brownfield v. City of Yakima*, 612 F.3d 1140, 1147 (9th Cir. 2010)

25   (citing *Huppert v. City of Pittsburg*, 574 F.3d 696, 702 (9th Cir. 2009)).  To

26   conduct this balancing, courts employ a five-step sequential test: (1) whether the

27   plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a

28   private citizen or public employee; (3) whether the plaintiff's protected speech was

1   a substantial or motivating factor in the adverse employment action; (4) whether the
2   state had an adequate justification for treating the employee differently from other
3   members of the general public; and (5) whether the state would have taken the
4   adverse employment action even absent the protected speech. (*Eng v. Cooley*, 552
5   F.3d 1062, 1070 (9th Cir. 2009).) Plaintiff has the burden of showing that he
6   satisfies the first three. (*Id.* at 1070-1071.) Because these are sequential steps,
7   Plaintiff's failure to prove any of the first three steps necessarily concludes the
8   Court's inquiry. (*Huppert*, 574 F.3d at 703.)

9       As set forth below Plaintiff's claim is barred because he is unable to prove
10  the first three steps. In addition, even if Plaintiff is able to prove the first three
11  steps, the undisputed evidence establishes that the City would have terminated
12  Plaintiff absent any protected speech.

### 1.   Plaintiff's Speech Is Not Protected Because It Does Not Involve Matters of Public Concern

15      "To state a claim for unlawful retaliation in violation of the First
16  Amendment, an employee must first demonstrate that the speech was on a 'matter
17  of public concern.'" (*Weeks v. Bayer*, 246 F.3d 1231, 1234 (9th Cir. 2001).)
18  Plaintiff cannot meet this threshold requirement. Speech involves a matter of
19  public concern when it can fairly be considered to relate to ***political, social or other***
20  ***concerns to the community***. (*Eng*, 552 F.3d at 1070.) Conversely, speech that
21  deals with individual disputes and grievances that are not relevant to the public's
22  evaluation of the performance of governmental agencies is not a matter of public
23  concern. (*Id.*) "If the speech in question does not address a matter of public
24  concern, then the speech is unprotected, and qualified immunity should be granted."
25  (*Id.* at 1070-1071.) The Ninth Circuit focuses on "two general aspects of speech
26  that indicate whether a statement relates to a matter of public concern. First and
27  foremost, [it] consider[s] the content of the speech…. [It] also consider[s] its form
28  and context." (*Weeks*, 246 F.3d at 1234). Whether speech touches on a matter of

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1  public concern is ultimately a question of law for the court to resolve. (*Connick v.*

2  *Myers*, 461 U.S. 138, 147-148, fn. 7 (1983).)

3       "In a close case, when the subject matter of a statement is only marginally

4  related to issues of public concern, the fact that it was made because of a grudge or

5  other private interest or to coworkers rather than to the press may lead the court to

6  conclude that the statement does not substantially involve a matter of public

7  concern." (*Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir.

8  2009) *quoting Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995).)

9  Here, the content, form and context of Plaintiff's speech centers on his individual

10  disputes and grievances.

11       As noted above, Plaintiff testified in his deposition that his termination was

12  based upon and limited to particular speech categorized as follows: (1) speech

13  related to Plaintiff's demand for promotion to sergeant (grievance and two Petitions

14  for Writ of mandate); (2) speech related to Plaintiff's request for reassignment from

15  the Communications Division (grievance); (3) complaint that Plaintiff was treated

16  poorly by a supervisor within the Communications Division and scrutinized closely

17  (hostile work environment complaint); and (4) complaint filed against a Lieutenant

18  based on the Lieutenant allegedly stating to Plaintiff's co-workers that it was "good

19  news" that Plaintiff was placed on paid administrative leave (personnel complaint).

20  (UF Nos. 68, 69)  This type of "speech" cannot be described as a matter of public

21  concern.  Rather, this speech is the epitome of a personal dispute that does not

22  relate to any societal concerns.

23       As cases have consistently held, each category of speech at issue here does

24  not touch on a matter of public concern.  A complaint of harassment or verbal abuse

25  is not speech on a matter of public concern.  (See *Desrochers*, 572 F.3d at 717

26  citing to *Robinson v. County of Los Angeles*, 566 F.3d 817, 822 (9th Cir. 2009)

27  (holding a supervisors harassment and verbal abuse constitute an individual

28  personal dispute and grievance, not speech on a matter of public concern); *Luox v.*

-14-  DEFENDANT CITY OF TORRANCE'S
MOTION FOR SUMMARY JUDGMENT

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1 *Marie*, 337 Fed.Appx. 695, 698 (9th Cir. 2009) (holding plaintiff's own internal

2 and confidential sexual harassment complaint was not a matter of public concern

3 because it dealt with an individual personnel dispute that would be of no relevance

4 to the public's evaluation of the performance of government agencies).[2]  This is

5 especially so because Plaintiff's October 2008 hostile work environment complaint

6 (centered on complaints of his supervisors strict management style) and Plaintiff's

7 December 2008 complaint (centered on supervisor's alleged comment made to co-

8 workers that it was "good news" that Plaintiff was placed on paid administrative

9 leave) dealt with an individual personnel dispute.

10         Similarly complaints about improper denial of promotion or denial for

11 reassignment are not speech involving a matter of public concern. (See *Wicks v.*

12 *Mississippi State Employment Services*, 41 F.3d 991, 995-96 (5th Cir.1995)

13 (complaints of improper discipline by supervisor and improper denial of promotion

14 not matters of public concern); *McEvoy v. Shoemaker*, 882 F.2d (10th Cir. 1989)

15 (complaints of improper transfers and failure to promote constituted speech that

16 was a matter of private, rather than public concern).  Accordingly, each category of

17 Plaintiff's speech identified is not protected and summary judgment is appropriate.

18              **2.      Plaintiff's Purported Disclosure of the City's Informant**

19                        **Policy Was Made In His Capacity As A Public Employee**

20         Plaintiff also claims he engaged in protected speech by disclosing the City's

21 policy regarding informants to the D.A.'s Office. This claim fails as this alleged

22 speech, if it even occurred, was made in Plaintiff's capacity as a police officer and

23 is not protected. "'Statements are made in the speaker's capacity as citizen if the

24 speaker had no official duty to make the questioned statements, or if the speech was

25 not the product of performing the tasks the employee was paid to perform.'"

26 _____

27 [2] See also, *Phelan v. Cook County*, 463 F.3d 773, 791 (7th Cir.2006) (complaint of personal sex harassment, even if also intended to vindicate the rights of another

28 woman, are not matters of public concern for purposes of section 1983 speech-retaliation claim.)

1  (*Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 749 (9th Cir. 2010)

2  (citing *Eng*, 552 F.3d at 1071).  Speech which "owes its existence to an employee's

3  professional responsibilities" is not protected by the First Amendment.'" (*Huppert*,

4  574 F.3d at 704).  Specifically, Plaintiff's speech allegedly made to uncover any

5  alleged corruption within the Police Department or the City were part of his

6  "official duties" as a police officer.  (*Id.* at 707.)  "It is clear that in California a

7  police officer's ***official duties*** include investigating corruption....[Citation]"  (*Ibid.*)

8       In *Huppert*, Plaintiff Huppert claimed First Amendment retaliation following

9  his cooperation with the FBI.  Huppert claimed that he assisted in the FBI

10  investigation of his police department, which he claimed was "outside [his] duties

11  as a member of the PPD."  (*Id.* 706-707.)  Huppert further claimed that his

12  communication with the FBI agents took place entirely "on [his] own time."  (*Id.* at

13  p. 707.)  The court rejected Huppert's claim and found that his actions were official

14  duties required of his position as a peace officer.  (*Ibid.*)  As the Court found:

15       "The duties of police officers are many and varied. Such officers are
the guardians of the peace and security of the community, and the

16  efficiency of our whole system, designed for the purpose of

17  maintaining law and order, depends upon the extent to which such
officers perform their duties and are faithful to the trust reposed in

18  them."

19  (*Ibid.*, citing *Christal v. Police Commission of City and County of San*

20  *Francisco*, 33 Cal.App.2d 564 (1939).)  "Though Huppert argues that he was

21  repeatedly informed by the FBI that his investigatory work was outside his duties as

22  a police officer, this is not enough to overcome California's jurisprudence defining

23  such duties."  (*Ibid.*)  When police officers acquire knowledge of facts which will

24  tend to maintain law and order, it is their duty to disclose such facts.

25       If Plaintiff believed that the Department's policy regarding the disclosure of

26  confidential informants in arrest reports were illegal in some fashion it was his duty

27  to disclose such facts and such disclosure is therefore unprotected speech.

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA  90045

1   However, even if Plaintiff's disclosure was made as a private citizen, Chief Neu

2   had no knowledge of Plaintiff's disclosure of the City's policy.[3]

### 3.   Plaintiff Has No Evidence That His Purported Speech Was A Substantial Or Motivating Factor For His Termination

5   Even if Plaintiff can overcome the first two tests discussed above, Plaintiff

6   cannot establish that his speech was a substantial motivating factor for his

7   termination. The Ninth Circuit has held that a public employee contending that he

8   was terminated for exercising his First Amendment rights must show more than that

9   the employer was aware of his protected speech and subsequently took an adverse

10  employment action. (See, e.g., *Keyser v. Sacramento City Unified Sch. Dist.*, 265

11  F.3d 741, 751 (9th Cir. 2001) ("By producing the mere evidence that Sweeney

12  knew of their charges, however, Keyser and Robledo do not create a genuine issue

13  of material fact on the question of whether Sweeney's decision to recommend their

14  reassignment was motivated by their charges"); See also *Erickson v. Pierce County*,

15  960 F. 2d 801, 805 (9th Cir. 1992) (holding that the entry of judgment for the

16  employer as a matter of law was appropriate because evidence that the employer

17  knew of the employee's political activity "simply does not support [the employee's]

18  claim that her [political activity] was a substantial or motivating factor in

19  [employer's] decision to terminate her"); *Gillette v. Delmore*, 886 F.2d 1194, 1198-

20  99 (9th Cir. 1989) (holding that the entry of partial summary judgment against an

21  employee was appropriate because evidence that his employer "knew of his

22  [political] activities" was "not sufficient to meet his burden in opposing summary

23  judgment" given that he had "shown no link between these events and his

24  termination").)

---

25  [3] First, Plaintiff admits that he did not even discuss with anyone from the D.A.'s
    Office or the County of Los Angeles regarding the City of Torrance's policy

26  relating to the disclosure of informants on arrest reports. (UF No. 75)
    Accordingly, the only evidence Plaintiff can point to is his April 23, 2010 appeal

27  letter sent to the D.A.'s Office. At the time Chief Neu made his recommendation to
    terminate Plaintiff, he had no knowledge of the contents of Plaintiff's April 23,

28  2010 appeal. (UF Nos. 59-60) This issue is discussed more extensively below.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA  90045

DEFENDANT CITY OF TORRANCE'S
MOTION FOR SUMMARY JUDGMENT

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1    Accordingly, a plaintiff claiming retaliation for the exercise of First

2    Amendment rights must "proffer particularized evidence of direct or circumstantial

3    facts . . . supporting the claim of improper motive." (*Blue v. Koren*, 72 F.3d 1075,

4    1083 (2d. Cir. 1995.)  Plaintiff must show that his speech was a "substantial factor"

5    in his termination. (*Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th Cir.

6    1996).)  Plaintiff's purported speech is a "substantial factor" where his termination

7    would not have been taken "but for" his speech. (*Ibid.*)  "[T]hat is to say, the

8    adverse employment action would not have been taken absent the employee's

9    protected speech". (*Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999).  As

10   discussed further below, the undisputed evidence establishes that the purported

11   speech and Plaintiff's termination were not proximate in time (in the one instance

12   where there may be temporal proximity, Plaintiff cannot establish causation

13   because the decision maker lacked knowledge about Plaintiff's speech) and

14   Plaintiff has no evidence that the proffered explanations for his termination were

15   false and pretextual.

16                          **a.    No Temporal Proximity**

17   Where a plaintiff seeks to show causation through temporal proximity, he

18   must demonstrate that the protected activity and retaliatory action are "very close."

19   (*Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).)  "The cases

20   that accept mere temporal proximity between an employer's knowledge of protected

21   activity and an adverse employment action as sufficient evidence of causality to

22   establish a prima facie case uniformly hold that the temporal proximity must be

23   'very close[.]'  Action taken (as here) 20 months later suggests, by itself, no

24   causality at all." (*Ibid.*, citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248,

25   1253 (10th Cir.2001); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th

26   Cir.1997) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168,

27   1174-1175 (7th Cir.1992) (4-month period insufficient)).

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1    Here, Plaintiff has identified and limited his alleged protected speech to six

2    particularized instances which occurred between January 2008 to December 2008.

3    (UF No. 69)  Each particularized instance of purported protected speech suggests

4    no causality at law.  Plaintiff was given notice of his recommended termination in

5    August 2010 and thus the time lapse between the alleged protected activity and

6    Plaintiff's termination represents a temporal chasm.  Four of the six identified

7    speech occurred **more than two years** prior to August 2010 and the remaining two

8    occurred **more a year and a half** prior.  The absence of any temporal proximity

9    dictates that there can be no inference of causation in this case and summary

10    judgment is appropriate.

                **b.**    **Plaintiff Has No Evidence That The Decisionmaker Was Aware Of His Disclosure To The D.A.'s Office**

13    In *Cohen v. Fred Meyer, Inc.*, 686 F. 2d 793 (9th Cir. 1982), the Ninth

14    Circuit held that the plaintiff could not establish a prima facie case of retaliation

15    without evidence that the decisionmaker knew about plaintiff's protected activity

16    when he made the decision that resulted in the adverse action.  "Essential to a

17    causal link is evidence that the employer was aware that the plaintiff had engaged

18    in the protected activity." (*Id.* at 796; See also, *Raad v. Fairbanks North Star*

19    *Borough School District*, 323 F.3d 1185, 1197 (9th Cir. 2003) (wherein the court

20    upheld summary judgment on plaintiff's retaliation claim because she did not

21    provide any evidence supporting her assertion that the particular principals who

22    made the allegedly retaliatory hiring decisions "in fact were aware of her [protected

23    activity].  Without such evidence, there is no genuine issue of material fact.").)

24    Here, Plaintiff claims that his April 23, 2010 appeal to the D.A.'s Office

25    disclosed the policy of the City of omitting confidential informants from arrest

26    reports and probable cause declarations.  Plaintiff admitted that he never had any

27    discussions with anyone from the D.A.'s Office or the County of Los Angeles

28    regarding disclosing such policy. (UF No. 75)  However,  the contents of the April

1   23, 2010 appeal were unknown to Chief Neu prior to his recommendation for

2   Plaintiff's termination. (UF No. 60)  In fact, Chief Neu had no knowledge

3   regarding Plaintiff's disclosure, if any, to the D.A.'s Office describing the City's

4   policy relating to the disclosure of informants on arrest reports or probable cause

5   declarations prior to Plaintiff's recommended termination. (UF No. 59)  Plaintiff

6   has no evidence to establish otherwise and thus Plaintiff cannot establish a prima

7   facie case of retaliation and summary judgment is proper.

8                    c.      **Plaintiff Has No Evidence That The Basis Of His**
                            **Termination Was False And Pretextual**
9

10          Plaintiff readily admits that his placement on the D.A.'s Brady Alert System

11   *caused* his termination from the City. (UF No. 52)  Plaintiff has no evidence that

12   the basis for his termination was false and pretextual.  In fact, Plaintiff clearly

13   understood the serious ramifications of being placed in the system.  Plaintiff

14   alleges, and thus admits, that the D.A. Office's determination to include him in the

15   "Brady Alert System" "did actually lead to, and were used as a basis for,

16   [Plaintiff's] termination." (UF Nos. 49, 51)  Plaintiff also admitted during his

17   deposition that his placement in the "Brady Alert System" resulted in his

18   termination from the City. (UF No. 49, 50, 51, 52)   The issue for purposes of this

19   motion is not whether the D.A.'s Office rightfully placed Plaintiff in the Brady

20   Alert System, but simply that he was placed and that the City was notified of the

21   placement.

22          Plaintiff has no knowledge regarding the substance of any discussions, either

23   verbally or in writing between any other Department employee and the D.A.'s

24   Office regarding the Brady Compliance Unit's investigation of Plaintiff. (UF Nos.

25   35, 53)  In fact, Plaintiff does not know if the Department had any involvement

26   with the D.A.'s Office placing him into the Brady Alert System. (UF No. 53)  As

27   such, Plaintiff cannot establish that his termination was none other than what it was

28   proffered to be as set forth in the Notice of Intent to terminate.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

#### 4. Defendants Had Adequate Justification For Terminating Plaintiff

Even if Plaintiff can satisfy the first three sequential tests discussed above, his claim still fails and Defendants are nonetheless entitled to summary judgment because the Defendants "would have reached the same adverse employment decision even in the absence of the employee's protected conduct." (*Eng*, 552 F.3d at 1072). The Defendants had legitimate non-retaliatory reasons for terminating Plaintiff and would have done so absent speech that occurred about two years prior.

After receiving Ms. Wakabayashi's June 10 letter, Chief Neu took steps to determine the impact on the Torrance Police Department of Plaintiff's placement in the "Brady Alert System." (UF No. 40)  To this end, on or about June 21, 2010, Chief Neu met with the Head Deputy Diane Vezzani (UF No. 41)  During this meeting, Ms. Vezzani advised Chief Neu that based on Ms. Wakabayashi's June 10 letter, she concluded that she would never approve a criminal filing of any case in which Plaintiff was a material witness, nor allow Plaintiff to testify in any such matter. (UF No. 43)  Ms. Vezzani considered Plaintiff's conduct, as described in Ms. Wakabayashi's letter, to be very serious because his conduct impacted his credibility as a witness.  (UF No. 44)

Prior to making a determination regarding Plaintiff's employment with the City, Chief Neu also reviewed the *Brady v. State of Maryland* decision and Brady Protocol Special Directive 02-08.  (UF No. 45)  After reviewing these sources, Chief Neu concluded that the D.A.'s Office had independently determined that it must, under *Brady*, disclose to the defense its finding that Officer Nazir included false information in police reports in connection with the Michael Baker arrest. (UF No. 46)

On or about August 16, 2010, Chief Neu recommended to the City Manager that Plaintiff be terminated.  (UF No. 54)  In his recommendation, Chief Neu noted that a police officer is required to, among other things, testify in Court in

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   connection with prosecution.  (UF No. 55)  Chief Neu also concluded that the

2   D.A.'s Office had made a final decision that it would have to disclose to the defense

3   its finding that Plaintiff made false reports.  (UF No. 56)

4       Based on Plaintiff's inclusion in the "Brady Alert System," Chief Neu

5   advised Plaintiff that his continued employment with the Torrance Police

6   Department would harm the public service in at least two significant ways: 1) cases

7   in which Plaintiff was the arresting officer, or a material witness, may not be filed

8   by the District Attorney, and 2) even if such a case were filed, Officer Nazir's

9   credibility would be subject to challenge and the prosecution of such a case would

10  likely to be undermined.  (UF No. 47)  Accordingly, Chief Neu's recommendation

11  stated that Plaintiff's placement in the "Brady Alert System" would prohibit him

12  from performing the essential and fundamental functions as a law enforcement

13  officer for the City and would result in extreme detriment to the Department and the

14  community it serves.  (UF No. 57)

15      Criminal defense attorneys seek to bolster their positions by attacking the

16  credibility, honesty and integrity of the police officer who is frequently the

17  principal witness to a defendant's misconduct.  It would be a significant

18  understatement to indicate that evidence of Plaintiff's dishonesty and/or lack of

19  integrity will predictably undermine his ability to successfully assist in the

20  prosecution of crime.  Chief Neu understood that Plaintiff could no longer

21  reasonably be expected to meet these obligations.  Therefore, termination was

22  reasonable given that Plaintiff's mere participation in a case will jeopardize the

23  ability to have justice served.

24      Not surprisingly and further buttressing the legitimacy of Plaintiff's

25  termination, Plaintiff, himself recognizes the fatal implications of being placed in

26  the Brady Alert System.  Plaintiff admitted that placement in the "Brady Alert

27  System" effectively "blacklists" him from further employment as a police officer as

28  "no law enforcement agency will hire him so long as he remains" in the System.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

DEFENDANT CITY OF TORRANCE'S
MOTION FOR SUMMARY JUDGMENT

1  (UF Nos. 48 - 53)

2      **C.     Individual Defendant Chief Neu Is Entitled To Qualified**
           **Immunity**
3

4          "Passing the First Amendment retaliation test is only a plaintiff's first hurdle

5  before defeating a motion for summary judgment on qualified immunity.  In

6  addition to showing the violation of a constitutional right, a plaintiff must also

7  demonstrate that the constitutional rights at issue were clearly established at the

8  time of the violation." (*Eng*, 552 F.3d at 1075.)  Qualified immunity protects

9  "government officials performing discretionary functions...from liability for civil

10 damages insofar as their conduct does not violate clearly established statutory or

11 constitutional rights of which a reasonable person would have known." (*Lytle v.*

12 *Wondrash*, 182 F.3d 1083, 1086 (9th Cir. 1999).)  This doctrine safeguards "all but

13 the plainly incompetent or those who knowingly violate the law.... [If] officers of

14 reasonable competence could disagree on th[e] issue [of whether a chosen course of

15 action is constitutional], immunity should be recognized." (*Id.*)

16         The law regarding public-employee free speech claims will "rarely, if ever,

17 be sufficiently 'clearly established' to preclude qualified immunity." (*Brewster v.*

18 *Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 980 (9th Cir. 1998)

19 (emphasis added).)[4]

20         Here, it cannot be "clearly established" that it was unconstitutional for Chief

21 Neu to terminate Plaintiff following notice from the D.A.'s Office that Plaintiff was

22 placed in the Brady Alert System for conduct involving moral turpitude and

23 dishonesty.  Indeed, all of Chief Neu's actions were legitimate and reasonable

24 personnel actions taken against Plaintiff without regard to any speech Plaintiff

25 ────────────────────────

   [4] In *Hansen v. Soldenwagner*, 19 F.3d 573, 575 (11th Cir. 1994), a police officer
26 who was suspended for making vulgar and critical statements about his department
   sued under section 1983 for a First Amendment violation.  The Court framed the
27 issue for qualified immunity as follows: "Was it clearly established ...that it was
   unconstitutional for police officials to investigate and to suspend an officer for
28 making vulgar, insulting and defiant criticisms of the department while giving
   testimony at a deposition...?" The answer in *Hansen* was "no." (*Id.*)

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA. 90045

1   made two years before.  Plaintiff has no evidence to establish a causal link between

2   his purported speech made in 2008 to his termination in 2010.

3   **III.    CONCLUSION**

4          For all of the foregoing reasons, Defendants respectfully request that the

5   Court grant their motion for summary judgment in its entirety.

6

7   Dated:  April 15, 2011                          LIEBERT CASSIDY WHITMORE

8

9                                           By: _____

10                                              Mark H. Meyerhoff
                                                Joung H. Yim
11                                              Attorneys for Defendants
                                                CITY OF TORRANCE and
12                                              JOHN J. NEU

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA  90045